Before I call the next case, I just would like to reiterate my apology to all of you in the courtroom if there is any inconvenience, because I am on the phone, but I am certainly hearing all of you. The next case is 14-1496, and it is Gerard v. Gerard. My name is Michael Dunn, and I am the representative for the appellant, Michael Gerard. I'm going to use my initial allotted time to focus on a prior decision of this Court, First Weber Group v. Horsfall, and how it applies to the facts in this case, because I think it is dispositive of the issues presented in this appeal. Horsfall arose out of an Illinois State Court judgment based upon claims of conversion and intentional interference with contract. The debtor then filed for bankruptcy, and then First Weber sought to have the debt declared non-dischargeable under 523-86 based upon the willful and malicious injury. In addressing the underlying judgment and its application as issue preclusion, this Court focused on, with respect to the malicious element, the intentional interference with contract claim, and this Court ruled that that decision was issue preclusion as to that element, because in rendering the judgment on that claim, the State Court had to make a finding that Horsfall's actions were not reasonable or taken in good faith. Well, you know, when I look at the memorandum that Michael filed, it seems that the only part that is true is the legal description of the property. Was there evidence that parts of it were true? Yes. The main assertion of the document, if you strip away all of the excess verbiage, the main assertion of the memorandum is that Michael possessed an equitable and beneficial interest in the real estate. That was acknowledged by the appellees in their amended complaint that they filed, because they sought partition of the property because of Michael's equitable interest. They eventually then abandoned that claim, and it's not clear from the record why they abandoned that claim, but in their amended complaint, acknowledged that Michael possessed an equitable interest in the property. And so you start with that proposition that he had an interest that he was entitled to protect. Michael's problem was not that he asserted an equitable interest in the property, it's that he included a lot of other statements that the jury concluded were not true. Had he simply limited the memorandum to a statement, I possess an equitable interest in the property, we wouldn't be standing before this court because that statement was true. It's because he added the extra verbiage that he got himself in trouble. And so his violation of the statute, in essence, was by adding extra verbiage that's really not essential to the interest that he possesses. Yes, he violated the statute, but it was more of a technical violation. What purpose did the memorandum serve other than to cloud the title? If you intentionally file a document whose only purpose is to cloud title, and the title is consequently clouded, haven't you intentionally caused the injury that comes from clouding a title? By intentionally filing the document, you cause an injury. But that doesn't mean that by intentionally filing the document, you intended to cause an injury, which is the standard under Geiger. But he testified that he knew the property wouldn't sell under cloud of title, and I think he conceded that he tore down the for sale signs clearly to prevent the property from selling. That surely sounds like an intentional tort, or at least a willful or malicious act, doesn't it? I mean, it seems to be enough under Horsfall. No, he's taking action because he believes he has an interest in the property, and he's taking action that he wants to protect that interest. And so he doesn't believe that the appellee should be able to sell the property free of his equitable interest. And yes, he is taking action that's contrary to the appellee's assertion that we have the preeminent right to sell the property. You have to focus, though, what was his intention at the time that he recorded the memorandum of interest. And his intention, as he set forth in his declaration that he filed in the bankruptcy case, was I'm doing it to protect my equitable interest in the property. Because the appellees have told him we're going to be selling the property. And he says, you can't. I have an equitable interest, and I believe I have a right to protect it. Okay, that's the last part. He said they can't. No, Michael's position is they can't. Well, if we're just putting that up just for the notice for any potential buyer who would go in and say, well, that's not my problem. If he's got a lien, then we pay a certain amount. I feel confused about what the property was originally worth. Some of the things I saw was as high as, what, $800,000 or $900,000? Well, no, the jury found that it was $575,000. The jury came up with that? There was a jury finding. All right. And so it's the, what, diminished from something?  Or is it $240,000? The $281,000 was a combination of monies that the Pellies paid to maintain the property during the time period that the memorandum, both before and after the filing of the memorandum of interest. Okay, so that's just what they're out of pocket, supposedly. Out of pocket in the sense that they're paying mortgage payments, some of which is going to principal, some of which is going to interest. But, yes, payments that are going out of their pocket to maintain the property. Okay. I assume the property must have diminished in value just because of the market, right? Well, actually, the jury found that it had not diminished in value. It did? Okay. The jury found that it was the same value when they first bought it and the same value when they rendered it in interest. Because that means you don't have to get into the bad market that occurred during all of this going on. Correct. Beachfront property or something? I'm sorry? On the lake? Yes. Mr. Dunn, if we agree with you about the race judicata issue, would the remedy be a remand to the bankruptcy court for a trial on Michael's state of mind? Essentially, yes. And that would be before Judge Kelly? Before Judge Kelly. Bench trial? Yes. Okay. Let me ask you, as I understand it, the jury found in response to question number three that there was no objective justification for Michael's slander of title here. Correct? Well, what the jury found was that Michael did not have a reasonable ground to believe that all of the statements in the memorandum were true. It's a very minimal threshold for you to run afoul of your privilege. Okay. So if the jury thinks one statement's not true, then it's obligated to rule that Michael's not entitled to the privilege. And that's slander of title. And that is slander of title. Okay. At least as I understand the question here, it's whether his claim of a subjective belief in justification, even if he's mistaken, if a judge believes him, is enough to defeat a claim of willful and malicious injury under 523A6. Correct. Certainly on the willful element, yes. And our cases, as I read them, frankly, don't quite decide that. But we've got dicta in the Gendusa-Nicolai case about libel that suggests such a subjective belief in justification would defeat the bankruptcy claim. But that would be an issue of fact to be tried for the first time in the bankruptcy court. Is that the way you see it? Yes. Okay. I see that I'm into my, what would be my rebuttal time, so unless there's other questions. Thank you. Thank you. Okay. Mr. O'Neill. Good afternoon, Your Honors. Matthew O'Neill on behalf of Appellees Kevin and Margaret Gerrard. The memorandum that was filed against the property contained not a shred of truth. It stated that by reason of a written contract that Michael Gerrard had an interest in this property, and the jury found that the written contract referred to was not a legitimate contract. That was the core of what was tried and rejected by the jury. The memorandum of interest went on to say that Kevin and Margaret held title for convenience only and hold title for the benefit of Michael. That, the jury found, was not true. Michael's defense at trial on the issue of whether he had a privilege to file this memorandum was that he was filing the memorandum only to protect his equitable interest in the lot. And that was rejected by the jury, not because he found they abused a privilege, but because the jury found he didn't have one to begin with by rejecting a subjective question which said, did Michael Gerrard have a reasonable ground for believing the truth of all of the contents of the memorandum? Wait a minute. You said that's subjective? That asks whether Michael Gerrard had a reasonable ground to believe it. And they found no. Okay, that sounds to me like an objective test. Were there reasonable grounds for believing the truth of the contents of the memorandum? But it was asked, did Michael Gerrard have reasonable grounds? Yeah. All right, looked at subjectively or objectively, it was tried directly upon Michael's assertion that he was filing this memorandum to protect his equitable interest, and the jury found, in response to that direct question, did he have a reasonable ground for believing the truth of all the contents? The jury found no. And that is a key finding by the jury in establishing both willful and malicious elements required for the nondischargeability. Well, it seems to me that the weakest part of the preclusion argument is jury finding number two, that Michael, quote, knew or should have known, end quote, that the filing was false. And that should have known sounds more like negligence than an intentional tort. The courts below seem to have read it as knew instead of should have known. What do you believe in the record requires that that reading instead of the reading that would be more favorable to Michael? Your Honor, I read question two in conjunction with question one and question three in arriving at the fact that what the jury found and what was tried in the state case satisfies the element of willful, requiring that intent to injure. And what question two shows is that, at a minimum, at the time Michael filed and kept this filing on the property throughout the trial, Michael knew or should have known that all or part of it was false, a sham, or frivolous. And that's the statutory standard. Yeah, that's the statutory standard. But should have known includes negligence, right? Should have known is a standard that can be applied in negligence action. This is not a negligence action. This is an intentional tort. No, no, no. It's an intentional act. That's why it's an intentional tort. Right. But it applies for the benefit of plaintiffs, for injured parties in such cases, a relatively low standard of proof, should have known. If you, in essence, negligently assert a property interest that hurts somebody else who really owns the property, you have to pay them for their losses. But that doesn't necessarily determine. That's my problem. But to get to a verdict, which we did, you don't only show that he should have known that the memorandum was false, a sham, or frivolous, or a part of it was. You have to show he intentionally filed the memorandum, which he did. You have to show that's secondary. And if he asserts a privilege, which he did here, you have to show that either he had no reasonable ground for believing the truth of what was filed, or if he can get beyond that hurdle, that he abused that privilege. We never even got to the abuse question. Right. This goes back to question number three, although I share Judge Rovner's concern about question number two as well. Did he have a reasonable ground? It doesn't ask, did he honestly believe the truth of the contents? True. I'll concede that. The question is, does he have a reasonable ground? All right. And, well, let's go to the language in Gendouza, Nikolai, or to the, I think it was the Sixth Circuit's decision in? Wheeler? Wheeler, yeah, where you've got a defamation case where reputation rather than title is slandered. And the opinion in Gendouza, Nikolai, says in dicta, and Wheeler holds that in essence if you think you've got a privilege, that means the debt can still be dischargeable. I don't read Wheeler that way. The way I read Wheeler is that the law for libel in the Sixth Circuit allowed for a finding of libel based upon reckless conduct. It did not have to be intentional. And because the record was not fully examined below. Reckless disregard for the truth, correct? Correct. And here we've got negligence. Well, I don't concede at all. An intentional act, but done with negligence towards the consequences and justification. That's questions one and two. I think question three goes beyond a negligence standard until you get, if the jury would have accepted that he had a reasonable grounds for believing the truth of the memorandum he filed, and he got to the secondary, what were questions four and five in the verdict, then you're getting back into this reckless disregard standard, which would have fallen right in line for Wheeler. Because that's what Wheeler said, we can't look at this record as it was presented to the court as going far enough to find that what the jury actually found was intentional libel versus reckless. That's what Wheeler found. Here, question three, we didn't get to questions four and five. We just found he didn't have a reasonable ground at all for believing the truth. And when you look at the standards that this court has set forth in Horsefall for willfulness, and then you look at the context of a lien itself, which is going to impede title, and Michael's admissions at trial, that he knew that it was going to cloud title, and he knew that was going to prevent Kevin and Margaret from being able to sell. That's where you get to, at a minimum, that this was an act substantially certain to result in injury. And that's what you need for willfulness. That's what this court has held. When you get to the maliciousness element and you look at Horsefall, you fall right into that is a finding by the jury that this was done without just cause or excuse. And further to the point in Horsefall, what the court went on to find is there was a similar defense put forth there by Mr. Horsefall on a privilege issue, and the court found that that mirrored the elements of maliciousness. So where did the jury find that Michael intended to injure your clients? The jury found that in the context of answering questions one, two, and three, yes, yes, and no. And they found it not by just looking at the face of the verdict, but this is where the lower courts were very specific that they read the entire record to see how the case was tried. And the case was tried by Michael by saying, all I wanted to do was protect this equitable interest. And the jury rejected that when it found he had no reasonable ground for believing the truth of it. They rejected his privilege. And I guess maybe the way to ask this is I would find it easier to agree with you if question three were phrased, did Michael Gerard believe the truth of all the contents of the memorandum? Well, I agree. If I was trying the case with an eye towards non-dischargeability, I might have written that question differently. But we tried the case as we tried the case under the standard jury verdict. Yeah, and that's the problem, right? And I guess if we reverse, don't you have like a half-day trial before Judge Kelly? We do. Well, I don't know if it will be a half-day or a day because I only control half of it. But, yes, if we reverse, we're down back for this property dispute that started in 2007, having yet another hearing on this after a full trial and several bankruptcy hearings, bankruptcy appeals, and now appeal in the underlying judgment. Yeah, that's where we end up. And I think the lower courts were correct, Your Honor, that reading the entire record, reading the evidence as it came in, reading Michael's concessions and testimony at trial, and verdict questions 1, 2, 3, and then 7 on injury, that the lower court should be affirmed. Thank you. Thank you. Mr. Dunn? Yes, Your Honor. Just very brief. The problem with the statute is that although it's a tort statute, it operates more like a strict liability statute. Once you establish that the recording of the instrument was done intentionally, you then drop into a negligence stand. And so there's no further requirement that you make a determination that the person was acting out of bad faith or that he was acting with intent to cause injury. A person who files an instrument that does have some misstatement of fact is liable, even if he had the best of intentions and was trying to protect a legitimate interest. Michael had a legitimate interest here because he had paid thousands upon thousands of dollars during the year period when there was supposed to be a contract to purchase the property. That was the source of his equitable interest. And that's why the appellees recognized that in the pleading that they filed with the court, that Michael had paid substantial. That's not the equitable interest he asserted. What he asserted is the parties of the second part, Kevin and Margaret, have acquired title for convenience only and hold title for the benefit of himself, right? I mean, that's just blatantly false, right? I understand his state, based upon the findings of the jury, that assertion is incorrect. But his assertion that he had an equitable interest was not incorrect. And so you want to handicap your prospects if we remand on the merits of this case? You want to handicap your prospects on remand? There are issues that were not brought out in the trial court that will be brought out in the bankruptcy court because Michael represented himself that I do think I have a good chance of winning on remand. And I see I'm out of time. Well, thank you both very much. Thank you, Your Honor. The case will be taken under advisement.